IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

DEMICO TREVOY SMITH                                                                    PETITIONER

v.                                    NO. 2:05CV00243 HDY

LINDA SANDERS, Warden, FCI                                                         RESPONDENT
Forrest City, Arkansas

## MEMORANDUM OPINION AND ORDER

BACKGROUND. It is not clear when petitioner Demico Trevoy Smith ("Smith") first entered the custody of the Federal Bureau of Prisons ("BOP"). He represents, and the Court accepts as true, that he came to be incarcerated at FCI Forrest City in Forrest City, Arkansas, following "his conviction for violating the terms of his [s]upervised [r]elease." See Document 1 at 2.

FEDERAL COURT SUBMISSIONS. In August of 2005, Smith commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He alleged the following in his petition:

> Petitioner is [tentatively] scheduled for transfer to a CCC on February 2, 2006, which is only three and one half months from his maximum release date of May 21, 2006. Petitioner has, however, requested that he be permitted to spend additional time in a CCC, citing his individual needs and circumstances, and stating that he require[s] additional CCC placement time. ...

> Respondent has denied his request citing a new Bureau of Prisons policy ... which took effect on February 15, 2005, whereas, prisoner[]s will only be permitted to serve the final ten [percent] (10%) of their sentences in a CCC, without regard to their needs and individual circumstances.

See Document 1 at 2-3. Smith maintained that the new BOP policy is invalid and otherwise violates the Ex Post Facto Clause of the United States Constitution. He sought the following relief: "to invalidate the ... policy and to direct respondent to consider in good faith placing him in a CCC for the final [six] months of his sentence, and in any event, to bar the retroactive application [of] the new policy to him ..." See Document 1 at 9.

Respondent Linda Sanders ("Sanders") thereafter filed an answer to Smith's petition. She maintained that he failed to state a claim for relief because he has no constitutional right to a place of incarceration. She also maintained that he failed to state a claim for relief because the new BOP community corrections center ("CCC") placement policy is consistent with the relevant statutes and case law and is a permissible interpretation of 18 U.S.C. 3621(b) and 18 U.S.C. 3624(c).

Smith subsequently filed a reply and supplemental reply to Sanders' submission. He again maintained that the BOP should be directed to "place [him] in a CCC for a period of not less than six months at the conclusion of his sentence." See Document 5 at 9. He joined those submissions with the pending motion for expedited disposition. See Document 5.

PRELIMINARY MATTERS. Before addressing Smith's petition, the Court makes note of two preliminary matters. First, he is challenging the BOP's interpretation of 18 U.S.C. 3624(c) and, in turn, the decision of the BOP to delay his entry into a CCC. The Court is convinced that his challenge involves a challenge to the execution of his sentence. He has therefore properly filed his petition pursuant to 28 U.S.C. 2241.

Second, a prisoner is typically required to exhaust his administrative remedies before filing a petition pursuant to 28 U.S.C. 2241. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). The requirement is capable of being waived, though, when a prisoner can show that attempting to exhaust would be futile. The Court finds that requiring Smith to exhaust his administrative remedies would be futile. Specifically, the BOP has taken a clear, consistent, and widespread stand against the position advocated by Smith.

BOP POLICY CHANGES AND RESULTING LITIGATION. The proceeding at bar is best understood when placed in a larger context, a context that involves at least two changes to the BOP's CCC placement policy. Prior to December of 2002, the BOP had a policy of "allowing [a] prisoner[] to serve [the] last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised." See Elwood v. Jeter, 386 F.3d 842, 844 (8th Cir. 2004). This policy was particularly favorable to a prisoner with a relatively short sentence because the policy allowed the prisoner to serve a significant portion of his sentence in a CCC.

In December of 2002, the Department of Justice's Office of Legal Council ("OLC") issued a memorandum opinion that provided, in part, the following: "[w]hen [a prisoner] has received a sentence of imprisonment, the [BOP] does not have general authority ... to place such [prisoner] in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time [the] BOP chooses during the course of his sentence." See Cohn v. Federal Bureau of Prisons, 2004 WL 240570 at 1 (S.D.N.Y. 2004). "[The] OLC [therefore] concluded that [the] BOP could no longer place [a prisoner] in [a CCC] to satisfy a prison term, except that, pursuant to 18 U.S.C. § 3624(c), [the] BOP could do so at the end of [a prisoner's] sentence for the lesser of (i) the last ten percent of the sentence or (ii) six months." See Cato v. Menifee, 2003 WL 22725524 at 1 (S.D.N.Y. 2003). [Emphasis in original]. Shortly thereafter, the BOP announced that it would adhere to the OLC's memorandum opinion.

The United States Court of Appeals for the Eighth Circuit addressed the BOP's adoption of the OLC's memorandum opinion in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004). In that decision, the Court of Appeals determined that the OLC's memorandum opinion was erroneous and that the BOP has the discretion to place a prisoner in a CCC at any time during his incarceration. The Court of Appeals determined that the BOP is not limited by the provisions of 18 U.S.C. 3624(c); instead, that statute imposes a duty on the BOP to take steps to facilitate a prisoner's re-entry into the outside world. That duty, though, was not to extend beyond the last six months of the prisoner's sentence.

In response to <u>Elwood v. Jeter</u>, the BOP adopted a new CCC placement policy on February 14, 2005 ("the February 14, 2005, policy").  The relevant portions of the February 14, 2005, policy provided as follows:

> **570.20.  What is the purpose of this subpart?**
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> **570.21.  When will the Bureau designate inmates to community confinement?**
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority …

The BOP thus acknowledged in the policy that it had the discretion to place a prisoner in a CCC prior to the last ten percent of the sentence being served.  The policy reflects, however, that the BOP would exercise its discretion, in advance, by limiting CCC confinement in every instance to the last ten percent of the sentence being served.

-5-

The February 14, 2005, policy spawned much litigation, including much litigation within this district. In July of 2005, United States District Judge George Howard, Jr., addressed a challenge to the policy in Fults v. Sanders, 2:05CV00091. He found that the policy was invalid because although it purported to be a "categorical exercise of discretion," it was actually not. "It merely repackaged the December 2002 blanket rule that was rejected in Elwood." See Fults v. Sanders, 2:05CV00091, Document 6 at 8.

The Court has also had several occasions to address the February 14, 2005, policy. In every instance, the Court has followed Judge Howard's lead and found that the policy is invalid. The Court will do likewise in this proceeding.

CONCLUSION AND REMEDY. Given the foregoing, the Court finds that the February 14, 2005, policy is invalid. Smith's petition for writ of habeas corpus is granted. Sanders is ordered to: (1) consider, within twenty days and in good faith, transferring Smith to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to the adoption of the OLC's December of 2002 memorandum opinion; and (2) place Smith in conditions that will afford him a reasonable opportunity to adjust to, and prepare for, his re-entry into the community during a reasonable part of the last ten percent of his terms, to the extent practicable, not to exceed six months.[1] His motion for expedited disposition is denied.

---

[1] In light of the fact that the petition has been granted, there is no need to address any of Smith's remaining arguments.

IT IS SO ORDERED this \_\_27\_\_\_ day of October, 2005.

_____
UNITED STATES MAGISTRATE JUDGE